QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert W. Stone (Bar No. 163513)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100
robertstone@quinnemanuel.com

  Sam S. Stake (Bar No. 257916)
  Elle Xuemeng Wang (Bar No. 328839)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700
samstake@quinnemanuel.com
ellewang@quinnemanuel.com

  Aaron Perahia (Bar No. 304554)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100
aaronperahia@quinnemanuel.com

*Attorneys for Plaintiff*
*and Counterclaim-Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMURE, INC., a Delaware corporation, | Case No. 3:24-cv-02592-AMO |
| Plaintiff, | Honorable Araceli Martínez-Olguín |
| vs. | **COUNTERCLAIM-DEFENDANTS' MOTION TO STRIKE CANOPY'S TRADE SECRET IDENTIFICATION AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION** |
| CANOPY WORKS, INC. f/k/a SMPLABS, INC., a Delaware corporation, SHAN SINHA, an individual, and VINAY PULIM, an individual, | |
| Defendants. | Hearing Date:    July 3, 2025 |
| AND RELATED COUNTERCLAIMS. | **REDACTED FOR PUBLIC FILING** |

Case No. 3:24-cv-02592

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 3, 2025 at 2 p.m. or as soon thereafter as the matter may be heard in the court room of the Honorable Araceli Martínez-Olguín, Courtroom 10 on the 19th floor of the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff and Counterclaim Defendant Commure Inc. and Counterclaim Defendants Athelas Inc., Tanay Tandon, and Dhruv Parthasarathy will and hereby do move the Court to strike Canopy Works, Inc. Identification of Trade Secrets Pursuant to California Code of Civil Procedure § 2019.210 and stay discovery on Canopy's Identification of Trade Secrets.

This motion is made on the following grounds:

1.      Canopy voluntarily disclosed certain trade secrets;

2.      Canopy fails to disclose its alleged trade secrets with particularity;

3.      Canopy fails to disclose where its alleged trade secrets lie within matters well known in the trade; and

4.      Cal. Civ. Proc. Code § 2019.210 requires that the party alleging trade secret misappropriation shall identify the trade secret with reasonable particularity before commencing discovery relating to the trade secret.

This motion is based on this notice of motion and motion and the accompanying memorandum of points and authorities, the pleadings and papers filed in this action, and any other written or oral arguments that Commure may present to the Court.

DATED: February 18, 2024                      QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP


                                              By_____/s/ Sam S. Stake_____
                                                      Sam S. Stake

                                              Attorneys for *Plaintiff and Counterclaim Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

      A.    Commure Partnered with Canopy to Supply the Strongline Solution to Hospitals .................................................................................................................2

      B.    Canopy Caused the Parties' Relationship to Rapidly Deteriorate in Late-2023 .....................................................................................................................2

      C.    Commure Filed Suit Against Canopy and Against its Former Employees for Unfair Business Practices .............................................................................3

      D.    Canopy Unjustifiably Delayed in Bringing its Counterclaims, a Preliminary Injunction, and Allegedly Misappropriated Trade Secrets Against Commure ..........3

      E.    Canopy Served a Deficient Trade Secret Identification .............................................3

LEGAL STANDARD .........................................................................................................4

ARGUMENT .......................................................................................................................4

II.    CANOPY'S TRADE SECRET IDENTIFICATION SHOULD BE STRICKEN .................4

      A.    Canopy Claims Secrecy Over Items that It Voluntarily Disclosed ...........................5

      B.    Canopy Fails to Specify How Each Alleged Trade Secret Has Been the Subject of Reasonable Efforts to Maintain its Secrecy ............................................8

      C.    Canopy May Not Rely On the Parties' Reseller Agreement as its Basis for Alleged Trade Secret Protection .............................................................................8

      D.    Canopy Fails to Describe The Alleged Trade Secrets With Particularity .................9

           1.    Canopy Fails to Define Numerous Aspects of Its Alleged Trade Secrets .............................................................................................................9

           2.    Canopy Fails to Provide Specificity To Separate the Alleged Trade Secrets From Matters Well Known in the Trade ........................................15

      E.    Canopy Fails to Describe How Alleged Trade Secrets 1-11 and 18-20 Are Valuable By Not Being Generally Known to the Public .......................................22

III.    DISCOVERY SHOULD BE STAYED UNTIL CANOPY IDENTIFIES ITS CLAIMED TRADE SECRET WITH THE REQUIRED SPECIFICITY .........................23

CONCLUSION ..................................................................................................................25

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

## TABLE OF AUTHORITIES

**Page**

### Cases

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005)...................................................................................... 4, 12

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
819 F. Supp. 2d 1001 (E.D. Cal. 2011) ..................................... 6, 7, 9, 11, 13, 14, 15

*Alphonso Inc. v. Tremor Video, Inc.*,
2022 WL 17968081 (N.D. Cal. Oct. 31, 2022) ................................................... 4, 25

*Bayco Prod., Inc. v. Lynch*,
No. 3:10-CV-1820-D, 2011 WL 1602571 (N.D. Tex. Apr. 28, 2011) ................................... 6

*Calendar Rsch. LLC v. StubHub, Inc.*,
2018 WL 4846797 (C.D. Cal. Aug. 7, 2018) ............................................................ 6

*Chung v. Intellectsoft Grp. Corp.*,
2024 WL 813445 (N.D. Cal. Feb. 12, 2024)........................................................... 22

*Cisco Sys. v. Chung*,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) ........................................................... 15, 22

*Comp. Econ., Inc. v. Gartner Grp., Inc.*,
50 F. Supp. 2d 980 (S.D. Cal. May 25, 1999)......................................................... 23

*DVD Copy Control Assn., Inc. v. Bunner*,
116 Cal. App. 4th 241 (2004).......................................................................... 22

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
2023 WL 3259471 (N.D. Cal. May 3, 2023) ..................................... 4, 9, 15, 24, 25

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir.1998)...................................................................... 4, 9, 15

*Jobscience, Inc. v. CVPartners, Inc.*,
2014 WL 852477 (N.D. Cal. Feb. 28, 2014)...................................... 5, 8, 10, 23, 24

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (N.D. Cal. 2016) ..................................... 4, 9, 10, 11, 12, 13

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
2019 WL 4284523 (C.D. Cal. June 11, 2019)......................................................... 12

*In re Providian Credit Card Cases*,
96 Cal. App. 4th 292 (Cal. Ct. App. 2002) .......................................................... 5

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

*RealD Spark, LLC v. Microsoft Corp.*,
　2023 WL 3304250 (W.D. Wash. May. 8, 2023) ....................................................................... 13

*Ruckelshaus v. Monsanto Co.*,
　467 U.S. 986 (1984) .............................................................................................................. 4, 5

*Soc. Apps, LLC v. Zynga, Inc.*,
　2012 WL 2203063 (N.D. Cal. June 14, 2012) ................................................................. 5, 9, 10

*Space Data Corp. v. X*,
　2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .......................................................................... 5

*Switch Commc'ns Grp. v. Ballard*,
　2012 WL 2342929 (D. Nev. June 19, 2012) .......................................................................... 12

*Teradata Corp. v. SAP SE*,
　2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) .......................................................................... 4

*VIA Techs., Inc. v. Asus Comput. Int'l*,
　2016 U.S. Dist. LEXIS 63676 (N.D. Cal. May 13, 2016) ....................................................... 12

*Vox Network Sols. v. Gage Techs.*,
　2024 WL 1260573 (N.D. Cal. Mar. 25, 2024) .......................................................................... 8

*Waymo LLC v. Uber Techs., Inc.*,
　2017 WL 6887040 (N.D. Cal. Nov. 14, 2017) .......................................................................... 4

*Webpass Inc. v. Banth*,
　2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) ................................................................... 22, 23

## Statutes

18 U.S.C. § 1839(3) ....................................................................................................................... 4, 22

Cal. Civ. Code § 3426.1(d) ............................................................................................................ 4, 22

California Code of Civil Procedure § 2019.210 .................................................................. 3, 4, 10, 23

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

**<u>INTRODUCTION</u>**

Canopy alleges that Commure misappropriated Canopy's alleged trade secrets in retaliation for Commure exposing Canopy's underhanded business practices—including inducing Commure employees to steal Commure confidential customer information, leave Commure, join Canopy, and use that information for Canopy's benefit.  But this claimed trade secret misappropriation is nothing more than a pretext.  Canopy first raised its baseless allegations 15 months ago when it was looking for an excuse to terminate the parties' contract—not for any legitimate reason but because it wanted to launch a competing product to challenge Commure's Strongline badge.

In response to Canopy's unlawful conduct, Commure pursued claims against Canopy and initiated arbitrations against three former employees who misused Commure's confidential customer information.  The Tribunal in the first-filed arbitration recently granted summary judgment for breach of contract in favor of Commure, confirming Canopy's misconduct.

After filing its retaliatory counterclaims in December 2024, Canopy repeatedly refused to identify its alleged trade secrets with the particularity required to prevent an unbounded discovery fishing expedition.  Only on January 31, 2025, did Canopy finally disclose 36 alleged trade secrets—but its identification is woefully deficient under controlling law.

Many of Canopy's so-called trade secrets are simply not secret.  Some are publicly visible product features.  Others are described in Canopy's own published materials.  Some are even industry standards made public by third parties.  Worse, Canopy's disclosure lacks the specificity required under governing precedent to allow Commure to assess the boundaries of its claims.

Despite these serious flaws, Canopy now demands immediate access to Commure's most sensitive proprietary information so it can amend its disclosures accordingly—an impermissible tactic expressly prohibited in this district.  Before discovery can proceed, Canopy must either abandon its improper claims over publicly available and commonly used information or amend its disclosures to meet the required legal standard.  Anything less would allow Canopy to abuse the discovery process and weaponize vague, unsupported allegations to gain improper access to Commure's trade secrets.

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

## BACKGROUND

**A.    Commure Partnered with Canopy to Supply the Strongline Solution to Hospitals**

To address the workplace violence epidemic in healthcare, Strongline LLC, and then Commure, engaged Canopy to supply the Strongline® duress solution, a commercial-grade product, according to Commure's specifications. Dkt. 20 ("FAC") ¶ 16. In December 2022, this cooperation was memorialized in the Reseller Agreement, wherein Canopy would supply the technology to Commure, and Commure would commercialize the white-labeled safety badges under the Strongline® brand and contract with customers. *Id.* ¶ 20. Due to Commure's commercialization efforts, the Strongline® product has been hugely successful and is in the hands of hundreds and thousands of healthcare workers. *Id.* ¶ 2.

**B.    Canopy Caused the Parties' Relationship to Rapidly Deteriorate in Late-2023**

Following Commure's merger with Athelas in October 2023, Canopy decided to capitalize on the market opportunity Commure had created and announced its intent to begin competing with Commure. *Id.* ¶ 42. In furtherance of its goal, Canopy conceived of an unlawful plan to hire Commure's salesforce to try and coax existing and prospective Commure customers to instead work with Canopy. *Id.* ¶¶ 42-44. Canopy's CEO personally approached at least three then-Commure sales employees and induced them to leave Commure and join Canopy. *Id.* ¶ 43. Prior to their departure from Commure and start with Canopy in virtually identical roles, each of these employees accessed and downloaded large numbers of confidential documents regarding prospective customers from Commure's database. *Id.* ¶¶ 43. These ex-Commure employees then used this information to interfere with Commure's existing and future business relationships for Canopy's benefit. *Id.* ¶ 44.

Shortly thereafter, Canopy wrongfully terminated the Reseller Agreement. *Id.* ¶ 33. As part of its termination, Canopy made the baseless accusation that Commure was reverse engineering Canopy's Strongline product, citing only to evidence of certain Commure employees' legitimate access to the Strongline dashboard. Dkt. 101-2 at 104 (Ex. 13).

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

**C.    Commure Filed Suit Against Canopy and Against its Former Employees for Unfair Business Practices**

Following Canopy's egregious behavior, Commure filed suit against Canopy, Canopy's CEO, Shan Sinha, and Canopy's CFO, Vinay Pulim, for unfair competition, federal trademark infringement, breach of contract, and tortious interference. *See* Dkts. 1 ¶¶ 32-67. Commure also initiated claims in arbitration against the three former Commure employees who took Commure's confidential information and used it for Canopy's benefit. Declaration of Evan Z. Pearson ("Pearson Decl."), ¶ 2. Recently, an arbitrator sided with Commure by finding that one of the ex-Commure and now-Canopy employees unlawfully took Commure's confidential customer information prior to leaving and used it for Canopy's benefit. *Id.*

**D.    Canopy Unjustifiably Delayed in Bringing its Counterclaims, a Preliminary Injunction, and Allegedly Misappropriated Trade Secrets Against Commure**

Over a year after Canopy accused Commure of reverse engineering the Strongline badges and eight months after Commure initiated this litigation, Canopy brought claims against Commure for, among other things, trade secret misappropriation, stating that Commure employees were improperly accessing the Strongline dashboard back in November 2023. Dkt. 101 at 11. However, it was not until Commure repeatedly requested a trade secret identification under California Code of Civil Procedure Section 2019.210 that Canopy served its Trade Secret Identification which came over a month after its counterclaims were filed, on January 30, 2025. Pearson Decl., ¶¶ 3-4; *id.*, Exs. A-B.

**E.    Canopy Served a Deficient Trade Secret Identification**

Canopy's trade secret identification claimed broad swaths of information and concepts spanning from those that are public and easily ascertainable to others that are standard in the industry. Most egregiously, Canopy claims protection over items listed in the Reseller Agreement which Canopy itself has made public numerous times in this litigation. *See, e.g.,* Dkt. 38-2; Dkt. 87-3; Dkt. 99-2. After Commure brought these deficiencies to Canopy's attention, Canopy refused to amend. Pearson Decl., ¶ 5; *id.*, Ex. C.

## LEGAL STANDARD

Courts grant motions to strike where trade secrets were not identified with reasonable particularity. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887040, at *10 (N.D. Cal. Nov. 14, 2017). "Under section 2019.210, a plaintiff is required 'to identify or designate the trade secrets at issue with 'sufficient particularity' to limit the permissible scope of discovery by distinguishing the trade secrets 'from matters of general knowledge in the trade[.]'" *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1111 (N.D. Cal. 2016) (finding trade secret disclosure insufficient) quoting *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005) (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir.1998) (citation omitted)). A trade secret right is extinguished if it is publicly exposed to others who are under no obligation to protect its confidentiality. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

"In any action alleging the misappropriation of a trade secret ..., before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity ...." *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, 2023 WL 3259471, at *5 (N.D. Cal. May 3, 2023) citing Cal. Civ. Proc. Code § 2019.210. A party's "obligation to respond to all discovery is stayed pending [the plaintiff's] compliance with the trade secret disclosure requirements of California Code of Civil Procedure § 2019.210." *Alphonso Inc. v. Tremor Video, Inc.*, 2022 WL 17968081, at *7 (N.D. Cal. Oct. 31, 2022). "The letter and spirit of section 2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with sufficient particularity to limit the permissible scope of discovery.'" *Advanced Modular*, 132 Cal.App.4th at 835 (quotations omitted).

## ARGUMENT

## II.    CANOPY'S TRADE SECRET IDENTIFICATION SHOULD BE STRICKEN

"A trade secret is defined to include 'all forms and types' of information that derives value from being secret and that the owner took reasonable measures to keep secret." *Teradata Corp. v. SAP SE*, 2018 WL 6528009, at *3 (N.D. Cal. Dec. 12, 2018) quoting 18 U.S.C. § 1839(3) and Cal. Civ. Code § 3426.1(d). To sufficiently plead ownership of a trade secret, Canopy must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of

general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Space Data Corp. v. X*, 2017 WL 5013363, at \*2 (N.D. Cal. Feb. 16, 2017). "A description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret." *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at \*4 (N.D. Cal. June 14, 2012).

To meet these standards, Canopy is required to serve a trade secret disclosure statement that provides "(1) a summary of the specific trade secret; (2) the backgrounds of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at \*5 (N.D. Cal. Feb. 28, 2014). Canopy's trade secret identification fails to meet these standards.

### A.    Canopy Claims Secrecy Over Items that It Voluntarily Disclosed

Canopy publicly disclosed many of the items it now claims as trade secrets at hospitals. This lack of secrecy is fatal to many of Canopy's alleged trade secrets. *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (Cal. Ct. App. 2002) ("Public disclosure … is fatal to the existence of a trade secret."). As California courts have recognized, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Id.* quoting *Ruckelshaus*, 467 U.S. at 1002.

**TS 14:** Perhaps the most egregious of these identifications is the claimed secrecy over ▮▮▮▮▮▮▮▮▮▮ In its identification for TS 14, Canopy identifies ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as a basis to claim that ▮▮▮▮▮▮▮▮▮▮ s a trade secret. Pearson Decl., Ex. A ("TSI") at 15. But such items are not trade secrets because they are outward-facing and plainly observable by not only the wearer,

but the public at large. *Calendar Rsch. LLC v. StubHub, Inc.*, 2018 WL 4846797, at *4 (C.D. Cal. Aug. 7, 2018), order clarified, 2018 WL 6258874 (C.D. Cal. Oct. 4, 2018) ("[O]utward-facing features … are not trade secrets") citing *Bayco Prod., Inc. v. Lynch*, No. 3:10-CV-1820-D, 2011 WL 1602571, at *4 (N.D. Tex. Apr. 28, 2011) (dismissing trade secret misappropriation claims and finding "plainly visible  product features ... do not qualify as 'trade secrets.'"). Thus, ██████████ have been voluntarily disclosed and cannot be maintained as an alleged trade secret.

**TS 12, 13, 31:**  This same logic applies to ████████████████████ ████████████████████████████████████ (TS 12), ████████████████████ ████████████████████████ (TS 13), and ████████████████████████ (TS 31). Canopy claims trade secret protection over its ████████████████████ ████████████████████████████████████████████████ TSI at 11.  Similarly, for ████████████ Canopy claims that ████████████████ ████████████████████████████████████████████████ ████████████████████████ is a protectable trade secret.  *Id.* at 14.  In TS 31, Canopy claims protection over ████████████████████████████████████████████ *Id.* at 29. These cannot qualify for trade secret protection because, as shown in the screenshots provided in the disclosures for TS 12 and 13, these items are plainly visible to any user of the Strongline interface. *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1019 (E.D. Cal. 2011) (finding "data fields [that] would be presented to the operator … is not trade secret information because it is readily deducible to anyone using the program or programs; *Calendar Rsch.*, 2018 WL 4846797, at *4 (C.D. Cal. Aug. 7, 2018) ("[O]utward-facing features that every user of an app can see and experience are not trade secrets."). For TS 31, ████████████ ████████████████████████████████████████████████ ████████████████████████ would similarly be visible to any user. TSI at 29.  To the extent Canopy claims a trade secret that goes beyond the display of this information in these disclosures, the disclosures are plainly inadequate as they fail to specify how the logs are populated or how any of its identified models function, causing these claims to fail on multiple fronts.

**TS 15:** Like its flawed claims with respect to TS 14, Canopy's assertion of protection over ███████████████████████████████ cannot qualify for protection. Not only does it re-claim the non-secretive ███████████████████████████████████ identified in TS 14, but it claims protection over some █████████████████████████████ which would be readily apparent to any user ████████████████ TSI at 15-16. Canopy cannot claim protection over ███████ ██████████████████████████████████████████ *Agency Solutions.*, 819 F. Supp. 2d at 1019.

**TS 11:** Canopy claims a trade secret in the ████████████████████████ ████████████████████████████████ and cites to ██████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████ as support. TSI at 9. Not only does this disclosure fail to explain the particularities of how these three items fit together in a "proprietary" way, but it ignores that these features were widely disclosed in public-facing sales brochures dating back to 2023. *See* Pearson Decl., Ex. D at 2 (███████████████████████████████████████████ ███████████████████████████████████████████████████). To this day, Canopy still advertises these capabilities ***publicly*** on its website and includes the same pictures ██████████ ███████████████████████.[1] *See* TSI at 10.

**TS 19:** Like TS 11, ███████████████████████████████████████████ was a value proposition publicly available in Strongline's marketing materials. Specifically, similar to Canopy's claim that ████████████████████████████████████████████████████████████ ████████████████████████████████ (TSI at 21), a Strongline sales brochure advertises that a ████████████████████████████████████████████████████████████████████ ████████████████████████████████ (Pearson Decl., Ex. D at 8). Additionally, Canopy's claim of secrecy over Strongline ████████████████████████████████████ ███████ (TSI at 21), was also disclosed in sales brochures that said Strongline could ████████ ████████████████████████████████████████████████████████████████████

---

[1] https://www.canopyworks.com/solution

███████████████████████ Pearson Decl., Ex. D at 8.  This feature of the Strongline system has been voluntarily disclosed and cannot be maintained as a trade secret.

**B.      Canopy Fails to Specify How Each Alleged Trade Secret Has Been the Subject of Reasonable Efforts to Maintain its Secrecy**

Canopy has failed to describe "how *each secret* has been the subject of reasonable efforts to maintain its secrecy." *Jobscience*, 2014 WL 852477, at *5.  In Amended Counterclaims, it generally alleges that Canopy maintained the secrecy of its trade secrets by engaging in a variety of practices that ranged from "maintaining information on a secure server" to "restrict[ing] client publication and disclosure of Canopy's information."  Dkt. 98, ¶¶ 31, 97, 110.  Then, in its Trade Secret Identification, rather than specifically identifying which measures it took to maintain each alleged trade secret's secrecy, it generally averred ████████████████████████████

████████████████████████████████████████████████

TSI at 1.  This is plainly inadequate because it does not allow Commure, nor the Court, to assess how each trade secret was the subject to reasonable measures of secrecy by Canopy—an essential element of maintaining trade secret.  *See Vox Network Sols. v. Gage Techs.*, 2024 WL 1260573, at *3 (N.D. Cal. Mar. 25, 2024) ("[A] trade secret [is] information that (1) derives its economic value from not being generally known, and (2) *is subject to reasonable measures of secrecy by its owner*.") (emphasis added).  Because of the strictures laid out in *Jobscience* and because Commure takes issue with many of Canopy's trade secrets being publicly disclosed, Canopy should be required to specify how each of its trade secrets was the subject to reasonable measures of secrecy to qualify as an adequately pleaded trade secret.

**C.      Canopy May Not Rely On the Parties' Reseller Agreement as its Basis for Alleged Trade Secret Protection**

Many of Canopy's claimed trade secrets are embodied in Exhibit A to the Reseller Agreement.  Canopy seeks to establish trade secret protection over those design parameters by relying on the Reseller Agreement's confidentiality provision.  *See* Dkt. 98, ¶ 30 (stating that Section 14.4's "defin[ing] [of] what constitutes confidential information ... embraced Canopy's trade secrets").  But the Reseller Agreement's definition of "Confidential Information" does not enlarge

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

or modify the definition of a trade secret. A*gency Solutions*, 819 F. Supp. 2d at 1015 (evaluating a confidentiality provision nearly identical to that included in the Reseller Agreement). Thus, even assuming, *arguendo*, that the Strongline badge design amounted to Canopy confidential trade secrets at the time of the agreement, which Commure disputes, those aspects of the Strongline badge lost all trade secret status once Exhibit A of the Reseller Agreement became publicly accessible, for example, through its posting on CM/ECF numerous times by Canopy. *See, e.g.,* Dkt. 38-2; Dkt. 87-3; Dkt. 99-2; *see also id.* at § 14.4(a)(i) (stating that confidential information will not include any information that "becomes generally known to the public without breach of any obligation"). Accordingly, Canopy is barred from asserting trade secret misappropriation against Commure for alleged trade secrets 8 (Dkt. 99-2 at 17), 9 (*id.* at 17), 11 (*id.* at 1-2), 17 (*id.* at 19), 18 (*id.* at 16), 19 (*id.* at 17-19), 31 (*id.* at 19), 32 (*id.* at 21), 33 (*id.* at 33), and 36 (*id.* at 21).

### D. Canopy Fails to Describe The Alleged Trade Secrets With Particularity

#### 1. Canopy Fails to Define Numerous Aspects of Its Alleged Trade Secrets

Many of Canopy's trade secret identifications also fail because they are directed to "concepts" and "categories of information" that fail to meet the reasonable particularity standard for disclosure. *HotSpot*, 2023 WL 3259471, at *6; *see also Soc. Apps*, 2012 WL 2203063, at *4 (same). Additionally, Canopy's use of "catchall" wording such as ███████████████ renders a disclosure "insufficiently specific." *Loop AI Labs*, 195 F. Supp. 3d at 1115 ("The Ninth Circuit has rejected the use of 'catchall' language, holding that such language is insufficiently specific 'because it does not clearly refer to tangible trade secret material.'") citing *Imax*, 152 F.3d at 1164–65 (determining that a phrase that contained "including" was an insufficient disclosure); *see* TS 1, 6, 8, 11-15, 19, 21, 31, 33. Canopy's further failure to cite to any documentation for 18 trade secrets further prevents Commure from ascertaining the boundaries of Canopy's alleged trade secret identifications. *See* TS 16, 20-37.

In *Social Apps, LLC v. Zynga, Inc.*, the Court evaluated whether the plaintiff's trade secret disclosure of "server architecture, … statistic recording and reporting, processes for adding and updating content, … functionality and organization of the source code, programming languages used [], and proprietary and open source software used to create the game" sufficiently identified its

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

alleged trade secrets in its disclosure to the defendant. 2012 WL 2203063 at *3. While the court found that specific lines of source code might be, it determined that these "general concepts to describe what it believes is its trade secret information" were not sufficient and compelled a more specific trade secret disclosure from the plaintiff. *Id.* at *5. The same conclusion is warranted here.

**TS 17, 19, 32** (██████████████████████ In these trade secret identifications, Canopy seeks to claim protection over ███████████████████████████ *See* TS 17 (█████████████████████████████████████████████ ██████████████████████████); TS 19 (█████████████████████████ █████████); TS 32 (████████████████████████████ ███████████████████████████████████). None of these identifications meet the standard needed to plead ███████████████████ trade secrets. *See Soc. Apps,* 2012 WL 2203063, at *4-5 (compelling a further disclosure where the "identification of the trade secret as ████████████ clearly is far too general"). Simply put, Canopy fails to identify with particularity what specific aspects of the ██████████████ it contends to be trade secret. and what specific elements it intends to argue were misappropriated at trial, which prevents Commure from learning the boundaries of the alleged trade secrets and formulate defenses. *Loop AI Labs,* 195 F. Supp. 3d at 1111, 1116.

**TS 11** ████████████: In this trade secret identification which claims protection over ██████████████████████████████████████ Canopy seeks to claim protection over information that could be "read so broadly as to incorporate everything about [Canopy's] business practices." *Jobscience*, 2014 WL 852477 at *4. The purported disclosure of a ████████████████████████ ████████████████████████████████████████ ████████████████████████████ is nothing more than listings of features which themselves include any number of features ██████████████ ████████████████ TSI at 9. This purported trade secret is contrary to the intent of Section 2019.210 which prohibits listing broad categories of information.

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

**TS 12, 24, 31** ███████████████████████ These trade secret identifications purports to claim protection over Canopy's ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████ *See* TS 12; *see also* TS 31 (█████████████████████████████████). TS 24 also claims protection over Strongline's ████████████████████████████ But these claimed trade secrets fatally lack particularity because they contain no mention of how █████████████████████ ██████████████████████████████████████████ *Loop AI Labs,* 195 F. Supp. 3d at 1111, 1116.

**TS 14 (**█████████████████████████**:** Canopy fails to provide adequate specificity regarding ████████████████████████████████████████████████████████████████ █████████████ TSI at 15. ████████can take on many different meanings and specificity is needed to understand which type applies to Canopy's purported trade secret.[2] Additionally, this disclosure fails to provide the requisite specificity around █████████████████████████ ████████████████████████████████████ causing it to fail from the same deficiencies as TS 12, 24, 31.

**TS 15** ████████████████████████████████████████**:** Beyond these ████████████ ███████████████████ readily ascertainable by any user of a Strongline badge (*see* Section I.A *supra*), this trade secret identification fails to provide how a user of the Strongline badge is able to ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Its vague reference to TS 14 fails to clarify what this platform is comprised of.

**TS 16**████████ This trade secret disclosure fails to make ***any*** mention of what constitutes a ████████████████████████████████████████████████████████████████████████ ████████████████████████████████ TSI at 17-18. Instead, all this disclosure provides is ███████ which do not qualify as trade secrets. *Agency Solutions*, 819 F. Supp. 2d at 1017 (████████ and the like are not trade secrets to the extent they are manifest in the way a program works.").

---

[2] ████████████████████████████████████████████████████████████

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

**TS 18** ████████████████████████████████ This trade secret disclosure claims protection over ████████████████████████████████████████████████ ████████████████████████████████████ is unique and secret. *VIA Techs., Inc. v. Asus Comput. Int'l*, 2016 U.S. Dist. LEXIS 63676, at *6 n.22 (N.D. Cal. May 13, 2016) (a plaintiff must explain how "the combination of these features is itself unique and secret.") quoting *Advanced Modular*, 132 Cal. App. 4th at 831-32 (brackets omitted); *see also Switch Commc'ns Grp. v. Ballard,* 2012 WL 2342929, at *5 (D. Nev. June 19, 2012) ("[Plaintiff] must specifically describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination."). Canopy's disclosure additionally improperly leaves the purported trade secret open-ended by stating that these software choices and configurations can be "[t]aken together[] or individually." TSI at 20; *see Loop AI Labs*, 195 F. Supp. 3d at 1115; *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 4284523, at *3 (C.D. Cal. June 11, 2019) (requiring further particularity where the defendant argued that plaintiff's trade secret disclosures were "open-ended" and used "catchall" phrases). Moreover, ████████ ██████████████████████ is well known in the trade and not a trade secret. *See* Section I.D.2 *infra*.

**TS 20** ██████████████████████████████████ This trade secret identification fails to provide any detail surrounding how the ██████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ TSI at 21. These broad action verbs are insufficient to permit Commure to discern the boundaries of what Canopy claims alleged protection over. *Loop AI Labs,* 195 F. Supp. 3d at 1111, 1116.

**TS 21** ███████████████████ This disclosure fails to describe ***any*** of Canopy's ████████ ████████████ aside from one non-limiting example. TSI at 21-22. This failure to disclose which ██████████████████ Canopy contends is a trade secret falls far short of providing sufficient detail.

**TS 22** ███████████████████████ This trade secret disclosure fails to describe how ██████ ██████████████████████████████████████████████████████████████████ TSI at

-12-

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

22-23. Moreover, this identification fails to specify how ████████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ *See Loop AI Labs*, 195 F. Supp. 3d at 1115.

**TS 23, 26** ██████████████████████████████████████████████████ Canopy's trade secret identifications in a ████████████████████████████████████████████ are deficient in many respects. Both the ████████████████████████████████████████████ ████████ identifications fail to specify what these ██████████re with any specificity. Instead, all they point to are the what functionalities are permitted *after* the function of ████████takes place. *See* TS 23 (███████████████████████████████████████████████ ████████████████); TS 26 (██████████████████████████████████████ ██████████████). Canopy should be required to clarify "exactly what th[ese] ████████ are so that both [Commure] and the Court will be able to determine what parts of [Canopy's] products are or are not utilizing [Canopy's] trade secrets." *RealD Spark, LLC v. Microsoft Corp.*, 2023 WL 3304250, at *5 (W.D. Wash. May. 8, 2023).

**TS 25 (**████████████████**):** This trade secret fails to provide *any* specificity as to what ████████████████ consists of besides ███████████████████████████████ ██████████████████████████████████ TSI at 26. The purported trade secret only says why ██████████████ was built and its purported function. *Id.* Design elements cannot serve as the basis for a trade secret. *Agency Solutions,* 819 F. Supp. 2d 1001 at 1016 ("The design may constitute the basis for a trade secret, such that information concerning it could be actionably misappropriated; but it is the information—*not the design itself*—that must form the basis for the cause of action.")

**TS 30** ████████████████████**:** This trade secret identification suffers from numerous infirmities preventing Commure from identifying what is claimed as a trade secret within this disclosure. At the outset, Canopy fails to disclose what ███████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ███████████████ TSI at 28. Nor does Canopy define████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* Instead, all it provides is high-level descriptions that fail to differentiate this trade secret from matters generally known in the trade. *See* Section I.D.2 *infra*.

**TS 33** ████████████████████████████ This trade secret identification fails to provide any specificity around what ████████████████████████████████████. The only detail provided in this disclosure is that ████████████████████████████████ ████████████████████████████████████████████████████████ TSI at 30. This identification improperly claims protection over the design and not the underlying information beneath the purported trade secret. *Agency Solutions*, 819 F. Supp. 2d at 1016.

**TS 34** ██████████████████████████████ This trade secret identification suffers from numerous infirmities preventing Commure from identifying what is claimed as a trade secret within this disclosure. This trade secret begins by identifying██████████ ████████████████████████████████████████████████████████████████ ██████ TSI at 31. None of these—████████████████████████—are defined, nor does this disclosure provide any indication of what █████████████████████████████.

**TS 35** ████████████████████████ This trade secret identification suffers from the same infirmities as TS 34 by stating only in generic terms what Canopy claims alleged protection over. Here, Canopy claims that an ████████████████████████████████ ████████████████████████████████████ TSI at 31. This purported trade secret identification again improperly claims protection over the design elements of the purported secret without identifying any of the underlying information that is employed to carry out these functions. *Agency Solutions*, 819 F. Supp. 2d at 1016.

**TS 36** ████████████████████████████████ This trade secret identification fails to describe what ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ TSI at 32. This disclosure's description of the functionality the ████████████████████

-14-                                        Case No. 3:24-cv-02592

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

provides is merely and improperly providing design elements and not the information that underlies it. *Agency Solutions*, 819 F. Supp. 2d at 1016. Additionally, these "broad, categorical terms that are merely descriptive of the types of information that generally *may* qualify as a protectable trade secret are insufficient[.]" *Cisco Sys. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020).

**TS 37** ███████████████████████████████ Like TS 34 and 35, this trade secret identification only uses generic design terms to describe what Canopy claims alleged protection over. Distilled to its essential elements, this perfunctory disclosure states that a ████████████████████████████████████████████████████████ ████████████ TSI at 33. This disclosure is not only non-sensical, but it only describes outputs which plainly cannot be trade secrets. *Agency Solutions.Com*, 819 F. Supp. 2d at 1017 ("[O]utputs, rules of operation, priorities of operation, and the like are not trade secrets to the extent they are manifest in the way a program works."). Similarly it fails to describe how "███████████ ████████████████████████████████████████████████████████ ████████ TSI at 33.

## 2. Canopy Fails to Provide Specificity To Separate the Alleged Trade Secrets From Matters Well Known in the Trade

Identification of trade secrets requires that a plaintiff "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Imax*, 152 F.3d at 1164. "Where the alleged trade secrets 'consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field.'" *HotSpot*, 2023 WL 3259471, at *5. Plaintiffs must provide the Court with a precise, "concrete identification" of what features or combinations of features it alleges are separate from matters of general knowledge. *See Imax*, 152 F.3d at 1167 (finding that where a trade secret claim involved a "sophisticated and highly complex" system, the district court or trier of fact will not have the requisite expertise in discerning what is a trade secret). Dr. Seth Nielson, who has extensive experience in computer networking, cybersecurity, short-range wireless technologies, computer

software, computer hardware (Nielson Decl., ¶ 2) confirms that Canopy's claimed trade secrets are common practices in the industry and extensively disclosed in public resources.

████ **TS 2, 3, 4, 5, 6, 7, 9, 10, 23, and 29):** Canopy claims protection over broad functionalities that are part of the public and widely adopted ████████████████ technology standard. *See* Nielson Decl., ¶¶ 66-70. None of these claimed "trade secrets" qualify for protection because each of them are widely used in the industry and Canopy fails to describe any details that separate them from matters of general knowledge in the trade. *Id.*

For TS 2, nothing about Canopy's claimed ████████████████ ████████████████ goes beyond the generic description of the actual data sent with ████████████████ Nielson Decl., ¶ 73. Instead, these types of data follow the standards for ████████████████ *Id.* As made evident by public information (*see id.*, ¶ 73 n. 34), the format of the ████████████████ ████████████████ Thus, nothing disclosed in TS 2 is an improvement or distinction from methods that are common in the industry.

For TS 3, 4, 5, and 6 Canopy claims protection over the ████████████████ ████████████████ ████████████████ But for each of these formats, while Canopy discloses the ████████████████ *See* Nielson Decl., ¶¶ 76, 79, 82, 85. Each of these advertising packets follows industry standards and norms for ████ ████████████████ ████████████████ *Id.* Given the lack of novelty, nothing disclosed in TS 3, 4, 5 and 6 is an improvement or distinction from methods that are common in the industry.

For TS 7, Canopy claims protection over the ████████████████ ████████████████ In this disclosure, Canopy describes an ████████████████ ████████████████ TSI at 6-7. But ████████████████ ████████████████ Nielson Decl., ¶ 87. In fact, the industry standard

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

practice is to ████████████████████████████████████████ *Id*. Additionally, ████████████████████████████████████████████ *See* Section I.D.2 (Alert Authentication) *infra*. Given this, Canopy's disclosure fails to provide any particular improvements or distinctions between their claimed trade secret and the industry standards and norms. Nielson Decl., ¶ 89.

For TS 9, Canopy claims protection over its purported ███████████████████ because it uses a ███████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ But collecting information from █████████████ ████████████████████████████████████████████████████ ████████████████████ These methods were not invented by Canopy and Canopy fails to identify any improvement over industry standards. Nielson Decl., ¶ 92.

For TS 10, Canopy claims protection over its static ███████████████████ ████████████████████ But the concept of ███████████████████████████████ is widely recognized as a fundamental component of any network in the industry. Nielson Decl., ¶ 94. In fact, according to the ███████████████████████████████████ *Id*. Thus, Canopy's purported trade secret identification discloses only industry standard practices for using the standard for ████████████████████████.

For TS 23, Canopy wrongfully claims protection over its █████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ TSI at 24. Aside from this disclosure being inadequately defined (*see* Section I.D.1 *supra*), █████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

█████████████████████ for the same purposes as Canopy describes in their disclosure and not protectable.  Nielson Decl., ¶¶ 98, 100.

Finally, for TS 29, Canopy improperly seeks protection over the "████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ TSI at 29-30.  For ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ Nielson Decl., ¶ 102.  ████████████ a common process in ████████████████████████████████████████████████ ██████ is widely recognized as a standard approach because it streamlines ████████████ ██████████████████████████ *Id.*, ¶ 104.

████████████████ **(TS 1, 36):**  These alleged trade secrets purport to claim protection over allegedly proprietary ████████████████████████████████ but, again, these alleged trade secrets fail to separate these matter from matters of general knowledge in the trade.  For TS 1, Canopy claims protection over ████████████████████████████████████ ████████████████████████████████████ but all of the claimed methods are widely used in the industry.  Nielson Decl., ¶ 58-59.  Additionally, the use of ███ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████ *Id.* ¶ 53.  In support of this statement, Dr. Nielson relies on a publicly-available article that discusses how to defend against ██████████████████████████ ████████████████████████████ *Id.* ¶ 53 n.4.  Thus, combining these publicly available and commonly used ██████████████████████████████████████████████ ████████████████████████████████████████████ as described in Canopy's disclosure, is merely using industry standards and practices to perform authentication.  *Id.* ¶ 55-59.

Similarly, for TS 36, in addition to this alleged trade secret being insufficiently defined (*see* Section I.D. 1 *supra*), Canopy claims protection over using a ██████████████████ ████████████████████████████████████████████████████████████

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

████████████████████████████████████████████████████████████████

████████████████████ Nielson Decl., ¶ 62. ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ *Id.*   Given the common use of these ████████████ techniques in the software industry, neither TS 1 or 36 provide any particular improvements or distinctions over methods that are commonly used.

████████████████████████████████████████ **TS 8, 17, 32):**  These alleged trade secrets purport to identify ███████████████████████████████████, but these trade secrets fail to separate this matter from matters of general knowledge in the trade.  Beginning with TS 8, Canopy claims protection over ████████████████████████████████ TSI at 8.  Specifically, Canopy ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ *Id.*  Additionally, Canopy claims that ██ ████████████████████████████████████████████████████████████████

██████████████████████████ *Id.*

But in the computer networking industry, it is standard practice for ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ Nielson Decl., ¶ 106.  It is also common  practice  for ████████████████████████████████████████ ████████████████████████████████████████████████████████ *Id.*  Thus, Canopy's disclosure fails to show how its alleged proprietary configuration of the gateways deviates from the industry standard.

For TS 17, in addition to this alleged trade secret being insufficiently defined (*see* Section I.D. 1 *supra*), Canopy's use of an ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████ are common and popular in the industry.  *Id.* ¶ 111.  Canopy's disclosure fails to provide any particular  improvements  or  distinctions  between  their  claimed  trade  secret  and  these  industry standard features and norms for ████████████ devices.

Finally, for TS 32, Canopy claims protection over a ███████████████ ████████ Aside from ██████████ being insufficiently defined (*see* Section I.D.1 *supra*), multi-channel notifications are a standard practice and norm in the industry. Nielson Decl., ¶ 113. Individuals may be ███████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ *Id.* In the software industry, it is common to ██████████████████████████████████████████████████████████████ *Id.* Given this, Canopy's disclosure fails to provide any indication of how its purported ███████████ ██████████████████ differs from or is an improve to industry standard practices. *Id.*

███████████████████████ **(TS 18):** This alleged trade secret purports to identify software used in a proprietary manner, but, not only were ██████████████████████████ ████████ (*see* Section I.D.1 *supra*), Canopy fails to allege a combination o███████████ that is separate from matters of general knowledge in the trade. As Dr. Nielson stated, it is common in the software development industry ██████████████████████████████████████████████████ ████████████████████████████████████████████ Nielson Decl., ¶ 117, 119 (including links to access each of the publicly available services). For the publicly available ████████████ ████████ in TS 18, Dr. Nielson notes tha██████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████ *Id.*, ¶ 120. Thus, it cannot be said that TS 18 provides any particular improvements or distinctions between the claimed trade secret and the identified industry standard software applications and components.

██████████████████████ **(TS 19):** This alleged trade secret purports to claim protection over ██████████████████████████ but not only is this trade secret inadequately defined (*see* Section I.D.1 *supra*), Canopy fails to allege a method that is separate from standard industry practice. According to publicly available information, it is standard in the industry for █████████████████ ██████████████████████ Nielson Decl., ¶ 125. To achieve this, it is standard in the industry for ██████████████████████████████████████████████████████████████ *Id.* On top of this, the concept of ██████████████████████████████████████████████████

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

██████████████ *Id.* Given this common offering across the industry, Canopy's purported trade secret does not supply any particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade.

███████████████████ **(TS 20):** This alleged trade secret purports to claim protection over ████████████████████████ but not only is this trade secret inadequately defined (*see* Section I.D.1 *supra*), Canopy fails to allege a method that is separate from matters of general knowledge in the trade. As Dr. Nielson stated, ████████████████████████

████████████████████████████████████████

████ Nielson Decl., ¶ 121. Thus, it is of no moment that Canopy ████████████████

████████████████████████████████ TSI at 22. These minor adjustments fail to provide any particular improvements or distinctions between their claimed trade secret and the industry standard approach of ████████████████████

████████████████████ Nielson Decl., ¶ 121.

████████████████████████ **(TS 27):** This alleged trade secret purports to claim protection over ████████████████████████ but, Canopy fails to allege any █████████ that is separate from matters of general knowledge in the trade. As Dr. Nielson stated, ████████████████████████████████████████

████████████ *Id.*, ¶ 129. Additionally, he explains that ████████████████

████████████████████████████████████████

████████████████████████████████████ *Id.* Further, ████████████████████████████████████████

████████████████████████████████████ *Id.* (citing publicly accessible article). Therefore, Canopy's storage of just another type of a ████████████ ██████ is not novel and cannot be purported trade secret.

████████████████ **(TS 30):** In addition to this alleged trade secret being insufficiently defined (*see* Section I.D. 1 *supra*), this alleged trade secret purports to identify a ████████████ ████████████████████████████, but Canopy fails to allege any use of this protocol that is separate from matters of general knowledge in the trade. As Dr. Nielson stated, the

-21-

Case No. 3:24-cv-02592

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

██████████████████████████████████████████████████████████████

Nielson Decl., ¶ 133 (providing a link to access the specification). Additionally, he notes that

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ¶ 133, 135. As such, it is not novel or a purported trade secret for Canopy to utilize this protocol as a part of the Strongline badge offering.

### E. Canopy Fails to Describe How Alleged Trade Secrets 1-11 and 18-20 Are Valuable By Not Being Generally Known to the Public

To establish the existence of a trade secret, a plaintiff must allege that the information "is valuable because it is unknown to others" and that it has "attempted to keep the information secret." *Webpass Inc. v. Banth*, 2014 WL 7206695, at *3 (N.D. Cal. Dec. 18, 2014) (granting motion to dismiss for failure to plead facts establishing how the alleged trade secrets derive such value) (brackets omitted); *see also Chung v. Intellectsoft Grp. Corp.*, 2024 WL 813445, at *8 (N.D. Cal. Feb. 12, 2024) ("[A] plaintiff seeking to prove ownership of a protectable trade secret must demonstrate that its purported trade secrets derive independent economic value, actual or potential, from not being generally known in the public or to other persons who can obtain economic value from its disclosure or use.") citing Cal. Civ. Code § 3426.1(d) and 18 U.S.C. § 1839(3). This element requires that the information alleged to be a trade secret "is valuable because it is unknown to others." *DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004).

Alleged trade secrets should be dismissed where they "say nothing about the economic value of the categories of information purportedly misappropriated by" a defendant. *Cisco*, 462 F. Supp. 3d at 1053. Here, Trade Secrets 1-11 and 18-20 fail to identify *any* purported value from these trade secrets not being generally known to the public, while others curiously do, showing that Canopy understands need to disclose such information but fails to do so for select "trade secrets." Trade Secrets 1-11 and 18-20 instead presumably rely either on the conclusory, boilerplate assertions set forth in Canopy's Amended Counterclaims (Dkt. 98 ¶¶ 100, 113 ("Canopy's confidential, proprietary, and trade-secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person

who could obtain economic value from the disclosure or use of the information.")) or the preamble to Canopy's Identification of Trade Secrets (TSI at 1 █████████████████████████ ██████████████████████████████████████████████████████). This reliance does not provide the specificity needed to sustain an alleged trade secret. *Webpass*, 2014 WL 7206695, at *3 (N.D. Cal. Dec. 18, 2014) (finding that the plaintiff failed to allege the existence of a trade secret where "[t]he Complaint conclusorily alleges that the 'information had and continues to have significant independent economic value by virtue of not being generally known to the public or to Plaintiff's competitors.'").

## III. DISCOVERY SHOULD BE STAYED UNTIL CANOPY IDENTIFIES ITS CLAIMED TRADE SECRET WITH THE REQUIRED SPECIFICITY

Given the foregoing wide-ranging deficiencies of Canopy's Trade Secret Disclosure, Canopy is not entitled to any discovery related to its trade secret misappropriation claims until it identifies actual, protectable trade secrets with the required specificity. Discovery related to Canopy's breach of contract claim on the ground of alleged reverse-engineering (Claim 13) should also be stayed because it is factually dependent on the trade secret claims.

It is axiomatic that "[a] true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery. *Jobscience*, 2014 WL 1724763, at *2; *see also* Cal. Civ. Proc. Code § 2019.210 ("In any action alleging the misappropriation of a trade secret … before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity[.]"). The reasons for this requirement are numerous and compelling, including "discouraging the filing of meritless complaints," preventing "fishing expeditions," helping the Court the determine the appropriate scope of discovery, and enabling a trade secret defendant for "complete and well-reasoned defenses." *Comp. Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 986 (S.D. Cal. May 25, 1999).

Here, as discussed *supra*, the trade secret identifications suffer from numerous infirmities including that many are not sufficiently identified. Thus, consistent with well-established precedent, discovery related to Canopy's trade secret claims should be stayed. This is particularly warranted

here because Canopy has sought all-encompassing discovery related to all technical and design aspects of Strongline Pro that exceeds the scope of Canopy's own trade secret disclosure. For example, Canopy's Request for Production No. 18 seeks "all documents and communications concerning the conception, development, and use of Strongline Pro," and its Request for Production No. 20 seeks all documents and communications concerning the design of Strongline Pro. Pearson Decl., Ex. E at 11. These two requests alone would require Commure to turn over each and every technical, design, and development document that records every single detail of Strongline Pro. And this is just the beginning of what Canopy is seeking. If discovery of these documents is allowed, nothing will stop Canopy from improperly tailoring its trade secret disclosure to whatever documents and technology Commure discloses—a practice this Court is against. *See Jobscience*, 2014 WL 1724763 at *2 ("[I]t is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff."). Commure is especially vulnerable to such a tactic as Canopy has failed to make any factual allegations that Commure wrongfully acquired, used, or disclosed any of Canopy's claimed trade secrets, but rather rely on a "reverse-engineering" theory (which is not an improper mean under DTSA and CUTSA). *See* Dkt. 98, ¶ 53. Allowing Canopy to see Commure's trade secret documents before Canopy can even articulate what it is claiming as trade secrets would effectively give Canopy a roadmap to manufacture a trade secret misappropriation claim that does not, and should not exist.

Discovery related to Canopy's breach of contract claim (Claim 13) should also be stayed. Claim 13 alleges that Commure reverse-engineered Strongline to create Strongline Pro, which is factually parallel with the trade secret claims. Dkt. 98 at 38-39. Discovery related to Claim 13 necessarily involves the technical and design details of Strongline Pro, which is precisely the type of documents that Canopy seeks, but is not entitled to, related to its trade secret claims. *See HotSpot*, 2023 WL 3259471 at *7 (staying discovery "on the portions of Nurix's breach of contract claim that do depend on trade secret misappropriation, and stays discovery on the CUTSA and DTSA claims, which relate to Nurix's trade secrets").

Even if the court were to find some portions of Canopy's 2019.210 disclosure to be

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION

sufficient, it should still stay discovery for trade secret claims until Canopy can provide a fully compliant 2019.210 disclosure.   Otherwise, it will allow Canopy to circumvent the basic requirement that its trade secrets be identified with specificity ***before*** discovery begins.   *See Alphonso*, 2022 WL 17968081, at \*7 (granting motion to stay discovery despite finding the plaintiff sufficiently disclosed some trade secrets); *see also HotSpot*, 2023 WL 3259471 at \*7 ("While Nurix argues that discovery on the reasonably particular trade secrets should be permitted to move forward, Nurix does not cite to any caselaw interpreting the statute so narrowly, and Court declines to do so.").

## **CONCLUSION**

For the foregoing reasons, the Court should strike Canopy's Trade Secret Identification in its entirety and stay discovery until Canopy is able to provide a rule-compliant Trade Secret Identification.

DATED: February 18, 2025                          QUINN EMANUEL URQUHART &
                                                                        SULLIVAN, LLP


                                                          By  */s/ Sam S. Stake*
                                                                        Sam S. Stake
                                                             Attorney for Commure, Inc.

COMMURE'S MOTION TO STRIKE AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION