NEEL CHATTERJEE (SBN 173985)
*NChatterjee@goodwinlaw.com*
MONTE COOPER (SBN 196746)
*MCooper@goodwinlaw.com*
THERESA A. SUTTON (SBN 211857)
*TSutton@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel.: (650) 752-3100
Fax: (650) 853-1038

*Attorneys for Defendants and Counterclaimants*
*Canopy Works, Inc., Shan Sinha, and Vinay*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COMMURE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY WORKS, INC. f/k/a SMPLABS, INC., a Delaware corporation, SHAN SINHA, an individual, and VINAY PULIM, an individual,<br><br>Defendants.<br><br>_____<br><br>CANOPY WORKS, INC. f/k/a SMPLABS, INC., a Delaware corporation,<br><br>Counter Claimants,<br><br>v.<br><br>COMMURE, INC., a Delaware corporation; ATHELAS, INC., a Delaware corporation; TANAY TANDON, an individual; and DHRUV PARTHASARATHY, an individual,<br><br>Counter Defendants. | Case No. 3:24-cv-02592-NW<br><br>**COUNTER-CLAIMANT CANOPY WORKS, INC.'S OPPOSITION TO COUNTERCLAIM-DEFENDANTS' MOTION TO STRIKE CANOPY'S TRADE SECRET IDENTIFICATION AND FOR STAY OF DISCOVERY ON TRADE SECRET IDENTIFICATION**<br><br>Date:     TBD<br>Time:    9:00 A.M.<br>Courtroom: 3 (5TH Floor)<br>Judge:   Hon. Noël Wise<br>          280 South 1ST Street<br>          San Jose, CA 95113<br><br>Complaint filed:    April 30, 2024<br><br>FAC Filed:       June 24, 2024 |

# TABLE OF CONTENTS

I.    Introduction ..................................................................................................................1

II.   Factual Background .....................................................................................................2

    A.   The Parties' Relationship. ....................................................................................2

    B.   Canopy's Identification of Trade Secrets Pursuant to California Code of Civil Procedure § 2019.210......................................................................................................................3

    C.   Commure's Objections to Discovery. ..................................................................4

III.  Argument ....................................................................................................................4

    A.   Section 2019.210 Disclosures are Discovery-Based and Serve to Promote Well-Investigated Claims...........................................................................................................4

    B.   Whether Section 2019.210 is Required in Federal Court is an Open Question. ....................6

    C.   Canopy is Not Obligated to Prove Success on the Merits at the Pre-Discovery Stage of this Matter. ...................................................................................................................7

        1.   Canopy Does Not Claim Secrecy Over Items that It Voluntarily Disclosed. ....................8

        2.   Canopy is not Required—in its Identification—to Describe How it Maintains Secrecy ..9

        3.   Section 2019.210 Does Not Require Articulation of Independent Economic Value.......10

    D.   Canopy's Disclosure Identifies its Trade Secrets with Reasonable Particularity. ...............11

        1.   Canopy's Trade Secrets Do Not Fail As "Concepts" or "Categories."............................12

        2.   Canopy Need Not Describe its Secrets to Separate Them from Matters of General Knowledge in the Trade. ...............................................................................................13

    E.   Discovery Should Not be Stayed Because Defendants Have Pending Affirmative Defenses and Counterclaims Unrelated to Canopy's Trade Secrets. ........................................................15

    F.   Canopy Should Be Given Leave To Amend..............................................................16

IV.   Conclusion ................................................................................................................16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005)........................................................................ 5, 11, 14

*Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*,
No. 8:13-cv-01880, 2017 WL 10543565 (C.D. Cal. Mar. 13, 2017)................................. 6, 10

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
No. 21-cv-08787-AMO (TSH), 2023 WL 4045234 (N.D. Cal. June 15, 2023) ...................... 7

*Brescia v. Angelin*,
172 Cal.App.4th 133 (2009)........................................................................... 5, 14

*Computer Econ., Inc. v. Gartner Grp., Inc.*,
50 F. Supp. 2d 980 (S.D. Cal. 1999) ................................................................... 11

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
No. 22-CV-04109-TSH, 2023 WL 3259471 (N.D. Cal. May 3, 2023) ................................ 16

*Int'l Med. Devices, Inc. v. Cornell*,
*No.* CV-2003503-CBM (RAOx), 2021 WL 686441 (C.D. Cal. Jan. 20, 2021)...................... 14

*Jobscience, Inc. v. CVPartners, Inc.*,
No. C 13-04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ................................. 8

*Krainski v. Nevada ex rel. Bd of Regents of Nevada Sys. of Higher Educ.*,
616 F.3d 963 (9th Cir. 2010) ........................................................................... 16

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (2016)........................................................................... 5, 14

*Loop AI Labs Inc. v. Gatti*,
No. 15-cv-00798-HSG (DMR), 2015 WL 9269758 (N.D. Cal. Dec. 21, 2015)..................... 16

*Perlan Therapeutics, Inc. v. Super. Ct.*,
178 Cal. App. 4th 1333 (2009)................................................................... 6, 7, 10, 14

*Phoenix Techs., Ltd. v. Device VM, Inc.*,
*2010 WL 8590525* (N.D. Cal. Mar. 17, 2010) ....................................................... 4, 5, 7

*SolarPark Korea Co. Ltd v. Solaria Corp.*,
2023 WL 4983159 (N.D. Cal. Aug. 2, 2023)........................................................... 11

*Waymo LLC v. Uber Techs. Inc.*,
2017 WL 6887040 (N.D. Cal. Nov. 14, 2017)........................................................... 6

ii

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019) ...................................................................................... 7

*Wisk Aero LLC v. Archer Aviation Inc.*,
    No. 3:21-cv-02450-WHO, 2021 WL 8820180 (N.D. Cal. Aug. 24, 2021) ............ 8, 10, 11, 12

**Statutes**

California Code of Civil Procedure § 2019.210.................................................................*passim*

California Uniform Trade Secrets Act ...............................................................................*passim*

Federal Defend Trade Secrets Act ....................................................................................*passim*

Federal Rules of Civil Procedure 26 ................................................................................ 6, 7, 10

## I.    INTRODUCTION

In order to capitalize on Counterclaimant Canopy Works, Inc.'s ("Canopy") tried and tested *Strongline* platform to compete in the marketplace, Counterclaim-Defendants brazenly copied and created a derivative work of *Strongline* that they labeled "Strongline Pro," and in doing so misappropriated Canopy's trade secrets. After Canopy obtained overwhelming evidence that Canopy Protect was created from its proprietary *Strongline* technology, asserted numerous counterclaims against Counterclaim-Defendants, including two counterclaims for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"), and filed a Motion for Preliminary Injunction based on those and certain of Canopy's other counterclaims. In connection with its Motion for Preliminary Injunction, Canopy also served (and filed) a 34-page Identification of Trade Secrets Pursuant to California Code of Civil Procedure § 2019.210 ("Section 2019.210), which details with exacting specificity 37 trade secrets related to Canopy's staff safety solution (the "Identification").

Recognizing the significant risk they face, Counterclaim-Defendants now seek to delay resolution of the Motion for Preliminary Injunction by asking the Court to Strike Canopy's Identification and to stay all discovery related not merely to the trade secrets but also Canopy's breach of contract claims. Dkt. 117 (the "Motion"). Counterclaim-Defendants' Motion should be denied.

The vast majority of Counterclaim-Defendants' arguments rely on a misunderstanding of governing law related to trade secrets identification at this stage of the litigation. Counterclaim-Defendants erroneously insist that Canopy must *prove* the existence of trade secrets before engaging in discovery. That merits-based position is not the law. Instead, Canopy must identify its trade secrets with reasonable particularity to enable Counterclaim-Defendants to defend against Canopy's claims and to engage in discovery on the trade secrets. Notably, Commure and its predecessor worked closely with Canopy for five years on the very technology at issue. The parties operated under strict confidentiality provisions that extended to Commure and its customers, and Commure's assertion that Canopy's Identification is insufficient is disingenuous at best.

Whether Canopy is even required to comply with Section 2019.210 is an open question

1

given the presence of its DTSA counterclaim. Nonetheless, as discussed below and in the Declaration of Markus Jakobsson, Canopy has satisfied the requirement to identify its trade secrets with reasonable particularity. Moreover, Counterclaim-Defendants' meritless arguments that the Court should stay discovery directed to its breach of contract counterclaims is belied by their own legal authority. Counterclaim-Defendants' Motion must be denied.

## II.    FACTUAL BACKGROUND

### A.    The Parties' Relationship.

Canopy, originally named SMPLabs, Inc. ("SMPLabs"), was formed in 2019 by Sinha, Pulim, and Canopy's Chief Scientist, Hemanth Meenakisundaram, with a focus on healthcare security technology solutions. Amended Counterclaims ("ACC") (Dkt. 98) ¶ 23. These co-founders had decades of success and experience in both software development and product design for numerous successful startups. *Id.*

In 2019, the co-founders of Canopy were introduced to Justin Green, Phil Green, and Brian Knowles, who devised a proof of concept and built a prototype for a staff safety solution for healthcare workers. *Id.* ¶ 24. The prototype was a kit-based and expensive product that was not scalable or useful. SMPLabs and CO initially wanted to work together to develop a viable and commercially deployable staff safety solution, but could not agree on an equity split of capital, and eventually divided their resources and talent into the two separate entities that became SMPLabs and Strongline LLC. *Id.* From the very outset of the relationship between SMPLabs and Strongline LLC, the parties recognized that SMPLabs (now Canopy) "own[ed] all worldwide right, title and interest to the Licensed Technology." *Id.* ¶ 26. The Licensed Technology was described as Canopy's "proprietary platform, comprised of a cloud services infrastructure, IoT hardware, software and related technologies," as further described in Exhibit A to the Agreement and certain documentation, along with "all improvements, modifications, translations, and derivative works thereof" created by or on behalf of Canopy. *Id.*

In 2021, Counterclaim-Defendant Commure, Inc. ("Commure") acquired certain assets of Strongline LLC. *Id.* ¶ 33. Canopy, Strongline LLC, and Commure executed an Amendment to the 2019 Agreement through which Commure assumed Strongline LLC's rights and obligations. *Id.*

2

Soon thereafter, Commure refused to abide by the payment terms of the amended agreement. *Id*. ¶ 34. After a brief legal battle in Delaware Chancery Court, Commure and Canopy executed a Reseller Agreement effective December 1, 2022. *Id*. ¶ 36. The 2019 Agreement and the Reseller Agreement contain strict confidentiality provisions, and also preclude Commure from copying or reverse engineering Canopy's technology. *Id*. ¶¶ 29-30, 42.

In November 2023, Canopy notified Commure that it did not intend to renew the Reseller Agreement, thereby officially terminating the Reseller Agreement on December 1, 2024. *Id*. ¶ 56. Commure then failed to timely pay Canopy, which gave Canopy the right—which it exercised—to immediately terminate the Reseller Agreement. *Id*. ¶¶ 62-67. The Reseller Agreement terminated on January 4, 2024, though Canopy has continued to support the then-existing customers (pursuant to the Reseller Agreement's surviving provisions). *Id*. ¶ 68.

**B.    Canopy's Identification of Trade Secrets Pursuant to California Code of Civil Procedure § 2019.210.**

On December 11, 2024, Defendants filed an Answer and Counterclaims, including counterclaims involving Commure's unfair competition (Ninth Claim for Relief), tortious interferences with contractual relations (Tenth Claim for Relief), tortious interference with prospective advantage, (Eleventh Claim for Relief), and breaches of Sections 3.2, 11.1, 14.1-14.2 of the parties' underlying Reseller Agreement (Thirteenth to Fifteenth Claims for Relief). Dkt. 87. Canopy also asserts counterclaims under the CUTSA and the Federal DTSA. *Id.* Almost immediately, Plaintiff Commure demanded that Canopy serve an identification of trade secrets pursuant to California Code of Civil Procedure Section 2019.210. The parties disagreed about whether such an identification is required in a Federal action such as this. Because Commure was refusing to produce relevant documents, and to avoid more controversy, Canopy served an Identification of Trade Secrets Pursuant to California Code of Civil Procedure § 2019.210 on January 30, 2025. On February 1, 2025, Canopy filed Amended Counterclaims and a Motion for Preliminary Injunction. The Identification is attached as Exhibit 5 to the Declaration of Monte Cooper in support of the Motion for Preliminary Injunction. (Dkt. 101-3, Ex. 5). The Identification specifies 36 trade secrets described in detail over 34 pages, with more than 250 pages of related

exhibits.[1] The Identification goes above and beyond any description necessary for Commure to develop its defenses and engage in discovery.

###### C.    Commure's Objections to Discovery.

Without initially offering any concrete details, Commure refused to produce documents responsive to certain of Canopy's requests for production and argued that the Identification failed to provide adequate particularity. Then, on February 18, Commure both moved to dismiss Canopy's trade secret counterclaims (Dkt. 117), and on February 19 separately moved to strike the trade secrets disclosure and stay all discovery related to the development and functionality of Strongline Pro (Dkt. 114). Commure took the position that the Identification does not involve a discovery dispute, even though CCP § 2019.210 exists pursuant to the California Discovery Act. Commure's Motion to Strike is a transparent delay tactic.

### III.    ARGUMENT

###### A.    Section 2019.210 Disclosures are Discovery-Based and Serve to Promote Well-Investigated Claims.

Canopy's Identification more than complies with Section 2019.210. *See, generally*, Declaration of Markus Jakobsson in Support of Opposition to Motion to Strike ("Jakobsson Decl."). California Code of Civil Procedure section 2019.210 reads:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

The "reasonable particularity" standard "allows a trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at trial on the merits." *Phoenix Techs., Ltd. v. Device VM, Inc., 2010 WL 8590525 at *2* (N.D. Cal. Mar. 17, 2010). "The trade secret designation mandated by section 2019.210 is not itself a pleading but it functions like one in a trade secrets case because it limits the scope of discovery in much the same way as the allegations of a complaint limit

---

[1] Though the Identification appears to contain 37 trade secrets, the paragraph numbering inadvertently skips No. 28. While paragraph 28 exists, there is no Trade Secret No. 28 identified; instead, the trade secrets jump from No. 27 to No. 29.

discovery in other types of civil actions." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005). The "reasonable particularity" standard does not mean that the party alleging misappropriation must define every minute detail of its claimed trade secret but instead it means that the plaintiff must make some showing that is reasonable. *Id.* "Generally speaking, pleadings are to be liberally construed in favor of the pleader and doubts about the permissible scope of discovery are to be resolved in favor of disclosure." *Id.* Further, Section 2019.210 does not create a procedural device to determine whether the trade secret actually exists, but rather it only modestly requires that the claimant identify the trade secret with reasonable particularity. *Brescia v. Angelin*, 172 Cal.App.4th 133, 149 (2009); *see also Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1111 (2016)( stating "there is no bright-line rule governing the level of particularity required by section 2019.210 [but] courts generally agree that in order to satisfy section 2019.210, a party alleging misappropriation need not 'define every minute detail of its claimed trade secret at the outset of the litigation[.]") (quoting *Advanced Modular Sputtering*, 132 Cal. App. 4th at 835-36); *Phoenix Techs., Ltd. v. DeviceVM, Inc.*, No. 09-4697-EDL, 2010 WL 8590525, at *2 (N.D. Cal. Mar. 17, 2010)(finding that "at this very preliminary stage of the litigation, the proponent of the alleged trade secret is not required, on pain of dismissal, to describe it with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate."); *see also* The Sedona Conference, *Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases*, 22 SEDONA CONF. J. 223, 232 (2021) (**Guideline 5**: "While an asserted trade secret should be identified at a level of particularity that is reasonable under the circumstances, ***a defendant should not use this standard as a tool to delay litigation by demanding particularity beyond that reasonably necessary*** for the defendant to develop its defenses and for the court to evaluate the claims and defenses" (emphasis added))[2]; Federal Judicial Center, *Trade Secret Case Management Judicial Guide* (2023), at 4-9 ("There is a growing consensus that a sufficient

---

[2] One of the Editors-in-Chief of the Sedona Conference *Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases* was California-based James Pooley, the former General Counsel for WIPO and one of the principal authors of the DTSA, as well as the author of the treatises *Trade Secrets* and *Trade Secret Case Management Judicial Guide* (2023).

identification is one that achieves two goals: "(a) put the defendant on notice of the nature of plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets. … To be sure, some courts require more and some require less. But this two-part test is the majority view.").[3]

As discussed below, Canopy's Identification easily satisfies the "reasonably particular" standard. *See, e.g.*, Jakobsson Decl. ¶ 8 ("Based on my experience, expertise, education, training, experience and personal knowledge, it is my opinion that Canopy has adequately described 36 trade secrets in its CCP § 2019.210 Disclosure. I do not believe the arguments set forth in the Declaration of Dr. Seth James Nielson in Support of Counterclaim-Defendants' Motion to Strike and Stay ("Nielson Declaration") to the contrary are accurate, or properly evaluate the nature of Canopy's trade secrets."). Indeed, for purposes of the present motion, Dr. Nielson's declaration and Commure's Motion reveal that Commure has been able to discern the boundaries of Canopy's trade secrets and investigate possible defenses thereto. Dkt. 119.

Commure incorrectly relies on a series of cases that assessed the particularity of a 2019.210 statement at the summary judgment stage, not pre-discovery. *See, e.g., Waymo LLC v. Uber Techs. Inc.*, 2017 WL 6887040 (N.D. Cal. Nov. 14, 2017). But, as one court has explained, '[f]or purposes of complying with section 2019.210 or FRCP 26, a plaintiff need not prove at the [pre-]discovery stage that each trade secret identified qualifies for trade secret protection. Rather, if the defendant contends that the plaintiff has identified a trade secret which the undisputed facts show is not secret, then the defendant should file a motion for summary judgment.'" *Id.* quoting *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, No. 813CV01880, 2017 WL 10543565, at *6 (C.D. Cal. Mar. 13, 2017) (citation omitted).

**B.     Whether Section 2019.210 is Required in Federal Court is an Open Question.**

Section 2019.210 is a California procedural statute in the California Discovery Act that applies solely to claims under the CUTSA. It provides that "before commencing discovery relating to the trade secret, the party alleging misappropriation shall identify the trade secret with reasonable

---

[3] The Federal Judicial Center's *Trade Secret Case Management Judicial Guide* was developed with input from numerous judges and trade secrets specialists under the guidance of the Berkeley Center for Law and Technology at the University of California, Berkeley School of Law.

CANOPY OPPOSITION TO MOTION TO STRIKE AND STAY                    Case No. 5:24-cv-02592-NW

particularity. . . ." Cal. Civ. Proc. Code § 2019.210 (emphasis added). The federal DTSA has no comparable requirement, and it is an "open question" whether a Section 2019.210 statement is required in a federal case asserting claims under both the DTSA and CUTSA. *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-cv-08787-AMO (TSH), 2023 WL 4045234, at *1 (N.D. Cal. June 15, 2023). Recognizing this tension, and to avoid a needless dispute, Canopy served its Identification on January 30, 2025, and also filed it with its Motion for Preliminary Injunction (Dkt. 101-3, Ex. 5). The Identification detailed 36 trade secrets, along with more than 250 pages of related exhibits. The Identification was above and beyond any description necessary, even under Section 2019.210.

### C. Canopy is Not Obligated to Prove Success on the Merits at the Pre-Discovery Stage of this Matter.

Commure's proposed standard—that "Canopy must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge'"—goes well beyond Section 2019.210 requirements outlined by California Courts.  Section 2019.210 "does not create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exits." *Perlan Therapeutics, Inc. v. Super. Ct.*, 178 Cal. App. 4th 1333, 1351 (2009). At this stage, Canopy "need not spell out the details of the alleged trade secrets," and may simply identify "the boundaries within which the secret lies." *WeRide Corp. v. Kun Huang,* 379 F. Supp. 3d 834, 846 (N.D. Cal. 2019). When ruling on the sufficiency of the Identification, the "identification should be liberally construed and reasonable doubts about its sufficiency should be resolved in favor" of Canopy. *Phoenix Techs., Ltd. v. DeviceVM, Inc.,* 2010 WL 8590525, at *3 (N.D. Cal. Mar. 17, 2010); *see also Trade Secret Case Management Judicial Guide* at 4-2 ("[t]he need for identification should not be weaponized or otherwise used to deny justice to the trade secret plaintiff. It is thus important to balance identification with a plaintiff's broad right to discovery under Fed. R. Civ. P. 26. Nor should identification be disproportionately burdensome and strict when compared with the efficiencies and other benefits it provides.").  As discussed below and in the Declaration of Markus Jakobsson, Canopy's Identification satisfies its obligations at this stage of the litigation.

CANOPY OPPOSITION TO MOTION TO STRIKE AND STAY                    Case No. 5:24-cv-02592-NW

Commure's primary argument rests on an incorrect reading of Judge Alsup's opinion in *Jobscience, Inc. v. CVPartners, Inc*, which pre-dates the enactment of the DTSA, and in which the plaintiff provided only a "three page narrative and three barely-legible schematics" for its trade secret identification.   No. C 13-04519 WHA, 2014 WL 852477, *2 (N.D. Cal. Feb. 28, 2014).  The *Jobscience* disclosure stands in stark contrast to Canopy's detailed 34 page disclosure setting forth 36 trade secrets with exhibits. In fact, in a subsequent order, Judge Alsup noted that "[g]iven the dubious nature of  Jobscience's alleged trade secrets," the court had imposed additional requirements on Jobscience. *Id*.  Despite the court's order, Jobscience only "provided a three-page narrative and three barely-legible schematics." *Id*.  Following Judge Alsup's order, Judge Orrick specifically evaluated the *Jobscience* ruling in *Wisk Aero LLC v. Archer Aviation Inc*., 2021 WL 8820180, *13 (N.D. Cal. Aug. 24, 2021).  The *Wisk Aero* court found: "In short, Section 2019.210 does not require an explanation of how the trade secrets meet the definitional elements. . . . [defendant] at least has fair notice of [plaintiff's] allegations on this front." *Id.* at *13. Indeed, the *Wisk* court noted it "erred in [another case] when [it] suggested that Section 2019.210 itself . . . requires that these elements be explained in the disclosure. That part of my opinion was dicta and I failed to read *Jobscience* closely enough. *Jobscience* did not hold that Section 2019.210 imposed the requirement; instead, it required the plaintiff to lay out its contentions about these two elements as a matter of case management." *Id*.  The *Wisk* court then determined that it was not necessary to follow *Jobscience* as "a matter of case management." *Id.*

### 1.    Canopy Does Not Claim Secrecy Over Items that It Voluntarily Disclosed.

Commure, relying solely on attorney argument, argues that Canopy improperly claims secrecy for Trade Secrets Nos. 11-15, 19 and 31, which Commure claims were voluntarily disclosed.  Mot. at 5-7.  Canopy has not voluntarily disclosed its trade secrets, as explained by its expert Markus Jakobsson.  *See* Declaration of Mark Jakobsson ("Jakobsson Decl.") ¶¶ 40, 50, 123, 149, 166-175.  Furthermore, whether Canopy voluntarily disclosed its trade secrets is not relevant to whether Canopy has sufficiently identified its trade secrets. *Perlan,* 178 Cal. App. 4th at 1351 (trade secret plaintiffs need not show "that the purported trade secrets are actually secret" in their

Section 2019.210 statements).  Moreover, as discussed in the Jakobsson Declaration, though some aspects of a trade secret may be observable, that does not make the trade secret as a whole disclosed. For instance, in reference to the button design claimed in Trade Secret No. 14 for ██████████ ██████████, which Commure claims is "the most egregious of these identifications, "a user cannot know which aspects are functional and which are aesthetic without being aware of the engineering choices that underlay the ultimate" design. Jakobsson Decl. ¶ 167. And to the extent that Canopy explains ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████.  The same is true for all the other trade secrets that Commure claims are observable to the public – the fact is, none are.  Jakobsson Decl. ¶¶ 166-175.  Even Commure's own expert makes no such claim in his Declaration.

### 2.   Canopy is not Required—in its Identification—to Describe How it Maintains Secrecy

As Commure admits, Canopy's Identification indicates that ████████████████████ ██████████████████████████████████████ because ████████████████████ ████████████████████████████████████████████████████████ ██████████████████████ Paragraph 30 of Canopy's Amended Counterclaims reflects that Canopy's efforts to protect its trade secrets include the following:  (a) source code was never made available to anyone other than Canopy engineers;  (b) documentation and other technical details about the *Strongline* system's operation were made available only to those individuals at Commure involved in the resell and support of *Strongline*;  (c) restricting client publication and disclosure of Canopy's information;  (d) requiring employees and contractors to sign confidentiality agreements; (e) maintaining confidential information on a secure server;  (f) whenever technical information (including, but not limited to, architecture, data schemas, algorithms, software code) must be

shared, it is only made accessible to engineering teams and access is allowed solely through, and protected by, Secure Shell Protocol (SSH) and private-access keys;  and (g) Canopy does not publicly disclose any of its secret, technical information online or in publications.

Contrary to Commure's argument, Canopy is not obligated to describe "how **each secret** has been the subject of reasonable efforts to maintain its secrecy." Motion at 8.  Secrecy "is an element of [Canopy's] case that must be proven, but not at the pre-discovery stage of the action." *Perlan,* 178 Cal. App. 4th at 1351.  Commure nonetheless argues that the Identification is required to, but does not, illustrate the measures taken to maintain the trade secrets' secrecy.

Despite the lack of requirement, Canopy has explained the efforts it makes to maintain secrecy over its trade secrets.  Dkt. 98, ¶31; Declaration of Theresa A. Sutton, Ex. A.

### 3.   Section 2019.210 Does Not Require Articulation of Independent Economic Value.

Although it did so with respect to Trade Secrets Nos. 12,-17, 21-27, 29-37, Canopy is not required to set forth in its Identification the economic value of any of its trade secrets. *See Bal Seal Eng'g, Inc. v. Nelson Prods., Inc*., No. 813CV01880JLSKESX, 2017 WL 10543565, at *6 (C.D. Cal. Mar. 13, 2017)("For purposes of complying with section 2019.210 or FRCP 26, a plaintiff need not prove at the discovery stage that each trade secret identified qualifies for trade secret protection."); *see also Wisk Aero LLC,* 2021 WL 8820180, at *13 ("Section 2019.210 does not require a plaintiff to [how the trade secrets derive independent economic value]. The statute itself contains no language requiring it, it only requires identification of the trade secrets.").

Commure's objections to Canopy's Identification narrowly focus on the fact that for some of the trade secrets, it does not include the words "economic value." Mot. at 22-23.  But Canopy, in fact, describes precisely how its secrets derive *value* from the information not being known to the public. *See e.,g.,* Dkt. 100-6 at 11:14-21; 14:15-21; 16:1-10; *see also* Jakobsson Declaration ¶¶ 48, 52, 98, 101, 104, 115, 119, 150, 157, 159.

Commure's reliance on *Webpass, Inc. v. Banth* is misplaced. The *Webpass* opinion followed briefing on a motion to dismiss the Webpass complaint, not a motion to strike a Section 2019.210. Whether Canopy properly pled its trade secrets claims is the subject of a currently-pending motion

to dismiss (Dkt. 125), and has no bearing on the sufficiency of Canopy's Identification. Commure's reliance on *Chung v. Intellectsoft Group Corp.* is even less relevant, as that case was resolved after Banth filed a motion for summary judgment. Again, the relevant standard is different. *Wisk Aero LLC*, 2021 WL 8820180, at *13 ("[I]f the defendant contends that the plaintiff has identified a trade secret which the undisputed facts show is not secret, then the defendant should file a motion for summary judgment.").

**D.    Canopy's Disclosure Identifies its Trade Secrets with Reasonable Particularity.**

Section 2019.210 requires only that a trade secrets plaintiff "identify the trade secret[s]" at issue "with reasonable particularity." Cal. Civ. Proc. Code § 2019.210; *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999). "Reasonable particularity" requires that a plaintiff "make some showing that is reasonable"—"fair, proper, just, and rational, under all of the circumstances to identify its alleged trade secrets in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." *Advanced Modular Sputtering*, 132 Cal. App. 4th at 835. Notably, the reasonable particularity requirement does not demand that Canopy "define every minute detail of its claimed trade secret at the outset of litigation." *Id.* at 835-36; *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2021 WL 8820180, at *13 (N.D. Cal. Aug. 24, 2021).

Moreover, as reflected by exhibits filed with the pending motion for preliminary injunction (Dkt. 101-3, Ex. 3 §10.4; Ex. 4 §14.4) the parties' relationship had been "memorialized through multiple confidentiality agreements evidenc[ing] that [Commure] possesses sufficient information about the alleged confidential and trade-secret information." *SolarPark Korea Co. Ltd v. Solaria Corp.*, 2023 WL 4983159, *4 (N.D. Cal. Aug. 2, 2023) (citation omitted). Under similar circumstances, Judge Martínez-Olguín found that a defendant "could 'hardly claim that it was unable to determine what trade secrets' [plaintiff] gave it under the agreement." *Id.*

Canopy's Identification easily meets either standard, as it identifies 36 trade secrets described with exacting particularity in over 34 pages.

CANOPY OPPOSITION TO MOTION TO STRIKE AND STAY                    Case No. 5:24-CV-02592-NW

### 1.    Canopy's Trade Secrets Do Not Fail As "Concepts" or "Categories."

Canopy's trade secrets are not limited to concepts and categories. Canopy went much further and sufficiently identified its trade secrets with reasonable particularity. *Wisk Aero*, 2021 WL 8820180, *7 (explaining that in considering a motion to strike the identification of trade secrets, the Court must view the disclosure "in the light most favorable to the pleading party").

Relying solely upon attorney argument, however, Commure incorrectly argues that Canopy's "trade secret identifications also fail because they are directed to 'concepts' and 'categories of information' that fail to meet the reasonable particularity standard for disclosure." Motion at 9:14-16. In many ways, Commure's argument is belied by its own expert, Dr. Seth Nielson. Dr. Nielson clearly understood what was intended from the accompanying descriptions of the trade secrets when Canopy used technical terminology in the headings. These include ███████ and ███████ as used in Trade Secrets No. 17, 19, and 32, ███████ ███████ as used in Trade Secret No. 18, ███████ " as used in Trade Secret No. 18, ███████ as used in Trade Secret 30, ███ ███████ as used in Trade Secret 36, and Dr. Nielson was able to evaluate the disclosure of each of these trade secrets without questioning the meaning of any of the technical terminology used. Nielson Decl. ¶¶ 60-65, 109-127, 132-135. The fact that Commure contends that ███████ as used Trade Secret No. 14 and ███████ as used in Trade Secret No. 19 are publicly-known features of *Strongline* reflects it has no problem understanding the Identification notwithstanding the use of those terms. Mot. at 6-7. In contrast to Commure's unsupported argument, Mr. Jakobsson explains why Trade Secret Nos. 11, 12, 14-16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 30, 31, 32, 33-37 are sufficiently detailed (see Jakobsson Decl., ¶¶ 166-175), including:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

Jakobsson Decl. ¶ 168 (describing Trade Secret No. 14). And, specifying where, in exhibits to the Identification, Canopy's secrets are reflected. *Id*. at 81-82.

Commure's reliance on *Social Apps, LLC v. Zynga, Inc.* is inapposite. In that case, the plaintiff identified "three broad categories of trade secret information." At *3. "For instance, SocialApps asserts that its trade secrets include 'gameplay items, icons and interface artwork,' and describes certain items and icons by name, but does not provide any specific identification of the items and icons[.]" Canopy's Disclosure goes well beyond the general categories identified in *Social Apps*. *See, e.g.,* Dkt. 100-6 at 15 (detailing Trade Secret No. 14, the ███████████ ████████ 21:3-24 (detailing Trade Secret No. 19, ██████████████████████ ██████████.

### 2. Canopy Need Not Describe its Secrets to Separate Them from Matters of General Knowledge in the Trade.

Commure incorrectly argues that Canopy must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." Motion at 15:17-19. Commure thus implicitly asks the Court to decide *as a matter of law* whether each trade secret identified actually constitutes a trade secret. Specifically, relying upon Dr. Nielson's opinions, Commure argues that Trade Secret Nos. 2, 3, 4, 5, 6, 7, 9, 10, 17-20, 23, 27-30, and 32 have not been sufficiently described to separate them from matters well-known in the industry. Motion at 9-15. However, the fact that Commure's expert Dr. Nielson and Canopy's expert Dr. Nielson both understand what is described in each of Canopy's disclosed trade secrets, but completely disagree as to whether the information suffices separately them from matters of general knowledge, by itself is sufficient for the Court to deny Commure's motion. *Trade Secret Case Management Judicial Guide* at 4-10 ("In cases where well-qualified experts are able to ascertain what information is being claimed as a trade secret, even if they disagree about the merits of whether the claimed information qualifies as a trade secret, the default rule should be to proceed with discovery").

Though Canopy is not required to satisfy this standard pre-discovery, Mr. Jakobsson explains how Commure misapplies this standard. For instance, with respect to Secret No. 8, Mr.

13

Jakobsson explains that Canopy's

Jakobsson Decl. ¶ 122; s*ee also, e.g., id.* ¶¶ 70, 125, 130, 138.

There is no requirement that Canopy prove in its Identification that its trade secrets were not generally known by others in the field. *Brescia,* 172 Cal. App. 4th at 149. Dr. Nielson's 40-page declaration is replete with admissions that he understands what Canopy's trade secrets are and can distinguish them from information already known to persons in the field. Dr. Neilson's declaration is sufficient to show the trade secrets are identified with reasonable particularity. *Advanced Modular Sputtering,* 132 Cal. App. 4th at 835; *Perlan Therapeutics, Inc*., 18 Cal. App. At 1351; *Phoenxi Techs., Ltd.*, 2010 WL 8590525, at *12-13 (relying on expert's opinion that trade secrets were adequately disclosed in denying motion to compel). If, as Commure claims, Canopy's trade secrets disclosure is insufficient, Commure would not be able to mount its defense. Commure's 25-page defense and Dr. Neilson's 40-page declaration belie any such notion.

Many of Canopy's trade secrets exist in a combination of characteristics and components and, for that reason, afford Canopy a competitive advantage. "A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectible secret." *Int'l Med. Devices, Inc. v. Cornell, No.* CV2003503CBMRAOX, 2021 WL 686441, at *8 (C.D. Cal. Jan. 20, 2021) (quoting *U.S. v. Nosal*, 844 F.3d 1024, 2042 (9th Cir. 2016) (*overruled on other grounds*)). Commure, however, relies on Dr. Nielson's erroneous conclusions that the "claimed trade secrets are common practices in the industry." Motion at 15:27-16:2. As Mr. Jakobsson explains, however, many of Canopy's trade secrets exist in a combination of otherwise public information. *See, e.g.,* Jakobsson Decl. ¶¶ 52 (Trade Secret No. 1 derives its value from a ; 53 (Trade Secret No. 36 comprises

████████████████████████████████████████████████████████████

████████████████████████████████ 80 (Trade Secret No. 5 derives value from ████████████

████████████████████████████████████████████. Commure is able to discern the boundaries of Canopy's trade secrets so as to investigate available defenses and Canopy is not required to distinguish each trade secret or component trade secret thereof from matters of known to skilled persons in the field. The Identification nonetheless attempts to distinguish each alleged trade secret from matters of general knowledge.

### E. Discovery Should Not be Stayed Because Defendants Have Pending Affirmative Defenses and Counterclaims Unrelated to Canopy's Trade Secrets.

Commure improperly construes Section 2019.210 to permit it to withhold all discovery related to the functionality and development of Strongline Pro, even where the same discovery is relevant to Canopy's other affirmative defenses and amended counterclaims. These counterclaims include claims of Commure's unfair competition (Ninth Claim for Relief), tortious interferences with contractual relations (Tenth Claim for Relief), tortious interference with prospective advantage, (Eleventh Claim for Relief), and for breaches of Sections 3.2, 11.1, 14.1-14.2 of the parties' underlying Reseller Agreement (Thirteenth to Fifteenth Claims for Relief). By way of example, the unfair competition counterclaim is predicated in part on the fact Strongline Pro is nearly identical to Canopy's own Strongline product—an allegation that does not rely on misappropriation of trade secrets at all. *See* Dkt. 98, ¶¶ 177-178. Similarly, Canopy's 24th affirmative defense and the counterclaims for breach of sections 14.1-14.2 are predicated upon Commure's acknowledgement that Canopy owns all intellectual property rights in Strongline and yet violated a promise not to copy or reverse engineer Strongline or create a derivative work. Dkt. 82, 24th Aff. Def.; Dkt. 98, ¶¶ 199-204. The development and functionality of Strongline Pro also is relevant to the question of whether Commure has suffered any injury or is entitled to damages for its claims, since Commure alleges consumer confusion whereas Canopy alleges there is none, in part because Canopy owns all Strongline intellectual property. Dkt 87, 12th, 13th & 15th Aff. Def.

Courts in this District have found that because such affirmative defenses and counterclaims

15

are not dependent upon proof of misappropriation of trade secrets, Section 2019.210 is inapplicable. *See HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-CV-04109-TSH, 2023 WL 3259471, at *6 (N.D. Cal. May 3, 2023) ("the Court permits discovery on the portions of Nurix's breach of contract claim that do not depend on trade secret misappropriation"); *Loop AI Labs Inc. v. Gatti,* No. 15-cv-00798-HSG(DMR), 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2105) (permitting discovery for claims based on tortious interference not based on any allegations of trade secret misappropriation). In fact, while in its Motion to Strike and to Stay Discovery, Commure argues that discovery to at least the counterclaim for breach of sections 14.1-14.2, alleging improper reverse engineering and copying of Strongline, should also be stayed because it would supposedly capture the same information as the misappropriation claims (Dkt. 117, at 24), in its Motion to Dismiss it does not argue that the counterclaim is commensurate in scope with Canopy's misappropriation claims (Dkt. 125, at 20-21). Commure should not be permitted to bootstrap its Section 2019.210 objections to avoid discovery on any affirmative defenses or counterclaims that are not actually predicated upon misappropriation.

### F.     Canopy Should Be Given Leave To Amend.

If the Court finds that any of Canopy's trade secrets are insufficiently identified, Canopy should be granted leave to amend its Identification. *See Krainski v. Nevada ex rel. Bd of Regents of Nevada Sys. of Higher Educ.,* 616 F.3d 963, 972 (9th Cir. 2010); *Loop AI Labs*, 195 F. Supp. 3d at 1111 (permitting leave to amend trade secret disclosure); *see also InteliClear,* 978 F. 3d at 662 ("Refining trade secret identifications through discovery makes good sense.").

## IV.     CONCLUSION

For the reasons set forth above, Counterclaim-Defendants' Motion To Strike Canopy's Trade Secret Identification And For Stay Of Discovery On Trade Secret Identification should be denied, and/or Canopy should be given leave to amend.

//

//

//

//

Dated: March 12, 2025

Respectfully submitted,

By: /s/      *Theresa A. Sutton*
NEEL CHATTERJEE (SBN 173985)
*NChatterjee@goodwinlaw.com*
MONTE COOPER (SBN 196746)
*MCooper@goodwinlaw.com*
THERESA ANN SUTTON (SBN 211857)
*TSutton@goodwinlaw.com*

DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
**GOODWIN PROCTER** LLP
525 Market Street, Floor 32
San Francisco, CA 94105
Tel.: (415) 733-6000
Fax: (415) 677-9041

*Attorneys for Defendants and Counter-Claimants Canopy Works, Inc., Shan Sinha and Vinay Pulim*

17

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **March 12, 2025**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **March 12, 2025**.

/s/ *Theresa A. Sutton*
THERESA A. SUTTON

18